UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ARANTZA ESPINOZA,                                    CASE NO.

     Plaintiff,

vs.

MANGO NY, INC.,
A Foreign for Profit Corporation
D/B/A MANGO

     Defendant.
_____/

**COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF, AND JURY TRIAL DEMAND**

     Plaintiff, ARANTZA ESPINOZA, through undersigned counsel, sues Defendant, MANGO NY, INC., a foreign corporation d/b/a MANGO (hereinafter referred to as "MANGO"), for declaratory and injunctive relief, and damages, and alleges as follows:

1)    This action is brought under Title III of the Americans with Disabilities Act ("ADA"), that is codified in 42 U.S.C. §§12181-12189.

2)    This action is also brought pursuant to 28 C.F.R. Part 36.

3)    This Court has jurisdiction over this case based on federal question jurisdiction, as provided in 28 U.S.C. §1331 and the provisions of the ADA.

4)    Furthermore, because this Court has jurisdiction over the ADA claim, the Court has supplementary jurisdiction over Plaintiff's common law tort claim pursuant to 28 U.S.C. §1367.

5)    Plaintiff is sui juris, and she is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA").

6)      Defendant, MANGO, is a foreign limited liability company authorized to do business and doing business in the State of Florida.

7)      Defendant, MANGO, is a company that sells men, women, teens, and kids clothing, swimwear, activewear, office wear, underwear, maternity wear and accessories. There is a retail location in Miami-Dade County.

8)      Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

9)      Plaintiff desires to prevent discrimination and demands equal access to Defendant's internet website to purchase sandals.

10)     Plaintiff also seeks declaratory and injunctive relief for trespass against the Plaintiff's computer.  The computer is Plaintiff's personal property, and a claim for trespass attached to same.

11)     The Defendant is also liable for compensatory damages to Plaintiff as a result of the trespass to Plaintiff's personal property.

12)     The remedies provided under common law for trespass are not exclusive, and same may be sought in connection with suits brought under the ADA.

13)     Venue is proper in the Southern District of Florida, Miami-Dade Division, since all events, actions, injuries, and damages complained of herein occurred in the Southern District of Florida.

14)     Furthermore, Plaintiff is a resident of Miami-Dade County which falls within the Miami Division of the Southern District of Florida.

15)     At all relevant times, Plaintiff is and was visually impaired and has Leber Congenital Amaurosis since birth that substantially impairs Plaintiff's vision.

16)     Plaintiff's visual impairment interferes with her day-to-day activities and causes limitations in visualizing their environment.  As such, Plaintiff is a member of a protected class under the ADA, 42 U.S.C. § 12102(1) - (2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101, et seq., and in 42 U.S.C. 3602, §802(h).

17)     Plaintiff regularly uses the computer, but she needs the assistance of special software for visually impaired persons.  The software that she uses is screen reader software that is readily available commercially.

18)     Defendant is a private entity which owns and operates retail locations.  The stores are open to the public, and each of Defendant's locations is defined as a "public accommodation" within the meaning of Title III of the ADA because Defendant is a private entity which owns and/or operates "[A] bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," per 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(2).

19)     Defendant's website is a place of public accommodation per 42 U.S.C. Section 12181(7)(E) because it's an extension of Defendant's brick and mortar stores.  The public is able to, among other things, view the products available at defendant's locations, purchase clothing, swimwear, activewear, office wear, underwear, maternity wear and accessories through defendant's website, subscribe to Defendant's newsletter, create an account and register to track orders, create a wish list, receive promotions and learn the story behind Defendant's brand.

20)     Since the Defendant's website is a public accommodation, it must comply with the requirements of the ADA.  The website cannot discriminate against individuals with disabilities.

21)     Plaintiff is a customer of Defendant who is and was interested in purchasing sandals through Defendant's website and at Defendant's stores and visiting Defendant's brick and mortar locations.

22)     Plaintiff is not able to visit the physical locations without the assistance of a family member or caretaker, so the ability to purchase merchandise on Defendant's website for delivery to her home is important to her as an alternative when she is not able to visit the Defendant's stores.

23)     The website also services Defendant's physical stores by providing information on its brand, receive promotions, and other information that Defendant is interested in communicating to its customers about its physical locations.

24)     Since the website allows the public the ability to view the products available at defendant's locations, purchase clothing, swimwear, activewear, office wear, underwear, maternity wear and accessories, through defendant's website, subscribe to Defendant's newsletter, create an account and register to track orders, create a wish list, receive promotions and learn the story behind Defendant's brand, the website is an extension of, and gateway to, Defendant's physical stores.  By this nexus, the website is characterized as an intangible service, privilege and advantage provided by a place of public accommodation as defined under the ADA, and thus an extension of the services, privileges and advantages made available to the general public by Defendant through its retail brick and mortar stores.

25)     Because the public can view and purchase Defendant's merchandise that is also offered for sale by Defendant at its physical stores, subscribe to Defendant's newsletter, create an account and register to track orders, create a wish list, receive promotions and learn the story behind Defendant's brand, the website is an extension of and gateway to the physical stores, which are places of public accommodation pursuant to 42 U.S.C. § 12181(7)(E). As such, the website, as an intangible service, privilege and advantage of Defendant's brick and mortar locations, must be fully accessible and in compliance with the ADA, must not discriminate

against individuals with disabilities, and must not deny full and equal enjoyment of the same services, privileges and advantages afforded to the general public both online and at the physical locations.

26)     At all times material hereto, Defendant was and still is an organization owning and operating the website located at https://shop.mango.com/. Since the website is open through the internet to the public as an extension of the retail stores, by this nexus the website is an intangible service, privilege and advantage of Defendant's brick and mortar locations, and Defendant has subjected itself and the associated website it created and maintains to the requirements of the ADA.

27)     Plaintiff is and/or has been a customer who is interested in patronizing, and intends to patronize, Defendant's physical stores, and purchase Defendant's merchandise, sign up for Defendant's newsletter and create an account through the website and at Defendant's physical stores.

28)     The opportunity to shop Defendant's merchandise from her home is an important accommodation for Plaintiff because traveling outside of the home as a visually disabled individual is often a difficult, hazardous, frustrating, confusing, and frightening experience. Defendant has not provided its business information in any other digital format that is accessible for use by blind and visually disabled individuals using screen reader software.

29)     Like most consumers, Plaintiff accesses numerous websites at a time to compare merchandise and prices. Plaintiff may look at several dozens of sites to compare features and prices.

30)     During the months of June and July, 2022, Plaintiff attempted on several occasions to utilize the website to browse through the merchandise to educate herself as to the merchandise

and with the intent to make a purchase through the website or at one of Defendant's physical stores.

31) Places of public accommodation are not just brick-and-mortar structures. The United States Department of Justice and the binding case law increasingly recognize that private entities are providing goods and services to the public through websites that operate as places of public accommodation under Title III.

32) Defendant is required to make reasonable accommodations to its websites for individuals with disabilities to allow them to participate in web-based promotions and obtain goods or services via the Internet just as sighted persons are able to do.

33) Plaintiff utilized Chrome Vox ("Screen Reader Software") to attempt to purchase clothing on Defendant's website. However, the Plaintiff was not able to freely and fully use Defendant's website because it contains access barriers that make it inaccessible to persons with disabilities, and for which there is no reasonable accommodation for the Plaintiff.

34) A person who can see can enjoy the benefits and privileges provided by Defendant's website that include, but are not limited to viewing the products available at defendant's locations, purchasing clothing, swimwear, activewear, office wear, underwear, maternity wear and accessories, through defendant's website, subscribe to Defendant's newsletter, create an account and register to track orders, create a wish list, receive promotions and learn the story behind Defendant's brand.

35) A person who cannot see, like the Plaintiff in this case, cannot go to Defendant's website and avail themselves of the same privileges. Thus, the Plaintiff has suffered discrimination due to Defendant's failure to provide a reasonable accommodation for Plaintiff's disability.

36)     The Department of Justice has provided useful guidance regarding website accessibility under the ADA, and the binding and persuasive case law in this district has applied the Web Content Accessibility Guidelines ("WCAG") 2.0 or 2.1 to determine accessibility.

37)     Defendant's website does in fact fail the following WCAG 2.0-AA Compliance standards and it does not provide sufficient alternatives to serve the equivalent purpose:

Operating system: Windows 10

Browser: Google Chrome v. 104.0.5112.102

Screen Reader: NVDA v. 2022.2.2

List of violations encountered:

Violation: Labels or instructions are not provided when content requires user input. The 'Combo Box' that enables the user to choose/type the country they are browsing in has an audible label (start typing edit blank) that provides no clear instructions as to what it is.

Applicable WCAG 2.1 Standard at Issue: Standard 3.3.2 Labels or Instructions (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/gpeb1u22613uvqk/2022_09_07_185555_01.mp4?dl=0


Violation: Labels or instructions are not provided when content requires user input. The 'Combo Box' that enables the user to choose/type the country they are browsing in does not read the options as a user cycle through them. They should work like this example shown on this page. The options presented in the dropdown are unfamiliar to the user. Not having them read out loud as they cycle through makes selecting the desired option difficult.

Applicable WCAG 2.1 Standard at Issue: Standard 3.3.2 Labels or Instructions (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/gpeb1u22613uvqk/2022_09_07_185555_01.mp4?dl=0

Violation: Focusable components do not receive focus in an order that preserves meaning and operability. When user enters the site by pressing on the 'ENGLISH (USA)' button they get taken to the cookies policy page. When trying to navigate away from that page and into the product content pages (by activating the 'WOMEN' button or the 'MANGO' button) the cookies policy page reloads again and again. Focus is not given to either the WOMEN's page or the home page (MANGO).

Applicable WCAG 2.1 Standard at Issue: Standard 2.4.3 Focus Order (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/lvvcimxbda0e3bq/2022_09_07_185555_02.mp4?dl=0

Violation: When an input error is automatically detected with the email address, the error is not described to the user in an audible way. User is then unable to 'Subscribe' without knowing why.

Applicable WCAG 2.1 Standard at Issue: Standard 3.3.1 Error Identification (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/yrazq63fnc5dcrn/2022_09_07_185555_03.mp4?dl=0

Violation: Labels or instructions are not provided when content requires user input. When a user cycles through the available sizes of a product, the label indicating that you can 'Receive a Notification' (because it's not available), is not rendered in an audible format.

When a user selects a size that is not available (size 5 in the video example), the modal prompting the user to provide an email so they can be notified about availability is not rendered in an audible format.

Applicable WCAG 2.1 Standard at Issue: Standard 3.3.2 Labels or Instructions (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/qzw7z07wi59jao7/2022_09_07_185555_04.mp4?dl=0


Violation: Labels or instructions are not provided when content requires user input. When a user cycles through the available sizes of a product within that product's detail page and clicks on a particular size because 'they want it', the 'Receive a Notification' modal is not rendered in an audible format. When a user tries to add that size to the shopping cart (size 6.5 in the video example), the modal prompting the user that it is out of stock is not rendered in an audible format.

Applicable WCAG 2.1 Standard at Issue: Standard 3.3.2 Labels or Instructions (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/w5hexz6ets8ergl/2022_09_07_185555_05.mp4?dl=0


Violation: When an input error is automatically detected with the promo code, the error is not described to the user in an audible way.

Applicable WCAG 2.1 Standard at Issue: Standard 3.3.1 Error Identification (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/s8tn0ep8wh4703b/2022_09_07_185555_06.mp4?dl=0

Violation: Labels or instructions are not provided when content requires user input. When a user cycles through the available payment options, there is audible label indicating which on is which. The user has no way of knowing whether they have selected a credit card, Klarna or PayPal

Applicable WCAG 2.1 Standard at Issue: Standard 3.3.2 Labels or Instructions (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/l27x4oubcd5498f/2022_09_07_185555_07.mp4?dl=0

38)     Furthermore, Defendant's website does not contain accessibility assistance that would direct a visually impaired person like the Plaintiff to someone who she can contact for assistance, questions, or concerns.

39)     Thus, Defendant has not provided full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations provided by and through the website, in contravention of the ADA.

40)     On information and belief, Defendant is, and at all times has been, aware of the barriers to its website which prevent individuals with disabilities who are visually impaired from comprehending the information within same, and is also aware of the need to provide access to all persons who visit its site.

41)     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged in this Complaint, such that this suit for declaratory judgment and injunctive relief is her only means to secure adequate and complete redress from Defendant's discriminatory practices in connection with use of its website.

42)     Notice to Defendant is not required because of Defendant's failure to cure the violations.

43)     Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§ 2201 and 2202.

44)     Plaintiff has retained the undersigned attorneys to represent her in this case, and has agreed to pay them a reasonable fee for their services.

## COUNT I – VIOLATION OF THE ADA

45)     Plaintiff realleges paragraphs 1 through 44 as if set forth fully herein.

46)     Defendant owns and operates the https://shop.mango.com/ website, and is a public accommodation subject to the ADA pursuant to 42 U.S.C. §12181(7)(E).

47)     Defendant's website is inaccessible to persons with disabilities like the Plaintiff, who is visually impaired.  Plaintiff was not able to enjoy full and equal access to the information and services that Defendant has made available to the public on its website, in violation of 42 U.S.C. §12101. *et seq*, and as prohibited by 42 U.S.C. §12182 *et seq*.

48)     Defendant's website is not in compliance with the ADA.

49)     Defendant has made no reasonable accommodation for Plaintiff's disability.

50)     A cursory review of a portion of the Defendant's website revealed that the website is not accessible to persons like the Plaintiff that are visually impaired as required by law and for which there is no sufficient alternative on Defendant's website, including:

Operating system: Windows 10

Browser: Google Chrome v. 104.0.5112.102

Screen Reader: NVDA v. 2022.2.2

List of violations encountered:

Violation: Labels or instructions are not provided when content requires user input. The 'Combo Box' that enables the user to choose/type the country they are browsing in has an audible label (start typing edit blank) that provides no clear instructions as to what it is.

Applicable WCAG 2.1 Standard at Issue: Standard 3.3.2 Labels or Instructions (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/gpeb1u22613uvqk/2022_09_07_185555_01.mp4?dl=0


Violation: Labels or instructions are not provided when content requires user input. The 'Combo Box' that enables the user to choose/type the country they are browsing in does not read the options as a user cycle through them. They should work like this example shown on this page. The options presented in the dropdown are unfamiliar to the user. Not having them read out loud as they cycle through makes selecting the desired option difficult.

Applicable WCAG 2.1 Standard at Issue: Standard 3.3.2 Labels or Instructions (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/gpeb1u22613uvqk/2022_09_07_185555_01.mp4?dl=0


Violation: Focusable components do not receive focus in an order that preserves meaning and operability. When user enters the site by pressing on the 'ENGLISH (USA)' button they get taken to the cookies policy page. When trying to navigate away from that page and into the product content pages (by activating the 'WOMEN' button or the 'MANGO' button) the cookies policy page reloads again and again. Focus is not given to either the WOMEN's page or the home page (MANGO).

Applicable WCAG 2.1 Standard at Issue: Standard 2.4.3 Focus Order (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/lvvcimxbda0e3bq/2022_09_07_185555_02.mp4?dl=0


Violation: When an input error is automatically detected with the email address, the error is not described to the user in an audible way. User is then unable to 'Subscribe' without knowing why.

Applicable WCAG 2.1 Standard at Issue: Standard 3.3.1 Error Identification (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/yrazq63fnc5dcrn/2022_09_07_185555_03.mp4?dl=0


Violation: Labels or instructions are not provided when content requires user input. When a user cycles through the available sizes of a product, the label indicating that you can 'Receive a Notification' (because it's not available), is not rendered in an audible format. When a user selects a size that is not available (size 5 in the video example), the modal prompting the user to provide an email so they can be notified about availability is not rendered in an audible format.

Applicable WCAG 2.1 Standard at Issue: Standard 3.3.2 Labels or Instructions (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/qzw7z07wi59jao7/2022_09_07_185555_04.mp4?dl=0


Violation: Labels or instructions are not provided when content requires user input. When a user cycles through the available sizes of a product within that product's detail page and

clicks on a particular size because 'they want it', the 'Receive a Notification' modal is not rendered in an audible format. When a user tries to add that size to the shopping cart (size 6.5 in the video example), the modal prompting the user that it is out of stock is not rendered in an audible format.

Applicable WCAG 2.1 Standard at Issue: Standard 3.3.2 Labels or Instructions (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/w5hexz6ets8ergl/2022_09_07_185555_05.mp4?dl=0


Violation: When an input error is automatically detected with the promo code, the error is not described to the user in an audible way.

Applicable WCAG 2.1 Standard at Issue: Standard 3.3.1 Error Identification (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/s8tn0ep8wh4703b/2022_09_07_185555_06.mp4?dl=0


Violation: Labels or instructions are not provided when content requires user input. When a user cycles through the available payment options, there is audible label indicating which on is which. The user has no way of knowing whether they have selected a credit card, Klarna or PayPal

Applicable WCAG 2.1 Standard at Issue: Standard 3.3.2 Labels or Instructions (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/l27x4oubcd5498f/2022_09_07_185555_07.mp4?dl=0


51)     Due to Defendant's failure to provide an ADA compliant website, the Plaintiff has been injured since she has been denied full access to Defendant's website.

52)     As a result, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303 to correct the inaccessibility that leads to discrimination against visually impaired persons.

WHEREFORE, Plaintiff requests entry of judgment in her favor and against Defendant for the following relief:

A.          A declaration that Defendant's website is in violation of the ADA;

B.          An Order requiring Defendant, by a date certain, to update its website, and continue to monitor and update its website on an ongoing basis, to remove barriers in order that individuals with visual disabilities can access, and continue to access, the website and effectively communicate with the website to the full extent required by Title III of the ADA;

C.          An Order requiring Defendant, by a date certain, to clearly display the universal disabled logo within its website, wherein the logo [1] would lead to a page which would state Defendant's accessibility information, facts, policies, and accommodations.  Such a clear display of the disabled logo is to ensure that individuals who are disabled are aware of the availability of the accessible features of the website;

D.          An Order requiring Defendant, by a date certain, to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto.

E.          An Order directing Defendant, by a date certain to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time to allow Defendant to undertake and complete corrective procedures to its website;

F.          An Order directing Defendant, by a date certain, to establish a policy of web accessibility and accessibility features for its website to insure effective communication for individuals who are visually disabled;

G.          An Order requiring, by a date certain, that any third-party vendors who participate on Defendant's website to be fully accessible to the visually disabled;

H.          An Order directing Defendant, by a date certain and at least once yearly thereafter, to provide mandatory web accessibility training to all employees who write or develop programs or code for, or who publish final content to, Defendant's website on how to conform all web content and services with ADA accessibility requirements and applicable accessibility guidelines;

I.          An Order directing Defendant, by a date certain and at least once every three months thereafter, to conduct automated accessibility tests of its website to identify any instances where the website is no longer in conformance with the accessibility requirements of the ADA and any applicable accessibility guidelines, and further directing Defendant to send a copy of the twelve (12) quarterly reports to Plaintiff's counsel for review.

J.          An Order directing Defendant, by a date certain, to make publicly available and directly link from its website homepage, a statement of Defendant's Accessibility Policy to ensure the persons with disabilities have full and equal enjoyment of its website and shall accompany the public policy statement with an accessible means of submitting accessibility questions and problems.

K.          An award to Plaintiff of her reasonable attorney's fees and costs pursuant to in 42 U.S.C. §§12181-12189, and pursuant to such other laws and statutes that may apply, and further relief as the Court deems just and equitable.



[1]

## **COUNT II – TRESPASS**

53)     Plaintiff realleges paragraphs 1 through 44 as if set forth herein.

54)     Defendant's website contains software analytics. Since Plaintiff has navigated Defendant's website as stated herein, Plaintiff's computer and the personal information and browsing history stored therein, has suffered a trespass by Defendant.

55)     Plaintiff never consented to and was unaware that Defendant's website was placing software on her computer.

56)     Defendant committed common law trespass in violation of Florida law against Plaintiff because Plaintiff did not consent to the placement of tracking and information securing software on her personal computer, which was done without her knowledge and consent.

57)     Defendant's trespass has damaged Plaintiff by affecting the condition and value of her computer.

58)     On its website, Defendant has an internet privacy policy section that can only be accessed by clicking a barely visible section at the bottom of the page called "Cookies Policy", providing that they use cookies and similar technologies to collect a consumer's information and they obtain non-public information from their users for their own advertising and marketing purposes by placing software on its website that collects a website user's preferences and internet browsing habits as follows:

COOKIES POLICY

Latest version: 01/01/2022

WHAT ARE COOKIES AND HOW ARE THEY USED?

Cookies are files installed on the computer, telephone, tablet or any other device of the user designed to record its activity during the browsing session on the present webpage and/or mobile application of MANGO ("Web/App").The use of cookies allows the server in which the Web/App is located to recognize the browser used by the user, granting the registered user, for example, access to the areas and services without having to register in each visit and record his/her preferences with regard to language, country, etc. in future visits. Cookies are also used to measure the audience and traffic parameters, monitoring the progress and number of entries.

WHAT ARE COOKIES AND HOW ARE THEY USED?

Cookies are files installed on the computer, telephone, tablet or any other device of the user designed to record its activity during the browsing session on the present webpage and/or mobile application of MANGO ("Web/App"). The use of cookies allows the server in which the Web/App is located to recognize the browser used by the user, granting the registered user, for example, access to the areas and services without having to register in each visit and record his/her preferences with regard to language, country, etc. in future visits. Cookies are also used to measure the audience and traffic parameters, monitoring the progress and number of entries.

WHO USES THE INFORMATION STORED IN THE COOKIES?

The information stored in the cookies of the Web/App is used by PUNTO FA, S.L. ("MANGO"), with Corporate Tax ID number B-59088948:

Postal address: Carrer dels Mercaders (Polígono Industrial Riera Caldes), 9-11, 08184

Palau-Solità i Plegamans (Barcelona)

Telephone: 1.866.6MNGMNG (1.866.666.4664)

e-mail: personaldata@mango.com

The information stored in the cookies managed by third parties is used by the external

organizations listed below.

WHAT TYPE OF COOKIES DOES MANGO USE?

Below we indicate the types of cookies used in the MANGO Web/App according to their

use and the organization that manages them (first and third-party cookies).

| Purpose | Description |
| --- | --- |
| Performance Cookies | These allow us to count the visits to the Web/App and traffic sources, quantify the number of users, and therefore measure and conduct statistical analysis on the use made by users. |

| | |
|---|---|
| Functional Cookies | These allow you to access the service with predefined characteristics in accordance with a series of criteria, for example, the language, the type of browser used to access the service, the regional configuration where the service is being accessed from, etc. |
| Strictly Necessary Cookies | These are necessary for the browsing and the optimal performance of our Web/App.For example, they make it possible to monitor the traffic and communication of data, access restricted areas, perform the purchasing procedure for an order, use security elements, store content in order to broadcast videos or share content via social networks. |
| Targeted Cookies | These cookies store information on the behaviour of users obtained through their browsing on the Web/App so that we can show you advertising related to your browsing profile. |

| Social Media Cookies | These consist of a series of social media services we have added to the webpage to allow you to share our content with your friends and networks. |
| --- | --- |

| Management | |
| --- | --- |
| First-party cookies | These are cookies that are created or managed by MANGO, with responsibility for the Web/App. |
| Third-party cookies | These are cookies that are managed by service providers external to MANGO. The third parties are listed in the "Set cookies" panel. |

HOW TO DISABLE COOKIES IN THE MOST COMMONLY-USED WEB BROWSERS

You can allow, block or delete the cookies installed on your computer in the settings options of your web browser. If you block them, certain services that require their use may not be available to you.

Below, we provide some links to information on how to enable your preferences on the most commonly-used web browsers:

Google Chrome

Mozilla Firefox

Internet Explorer

Safari

Opera

If you have accepted the third-party cookies, you can delete them from your web browser options or from the system offered by the third-party itself.

HOW TO MANAGE YOUR CONSENT PREFERENCES

You can configure the categories of optional cookies by clicking on the cookie settings button below:

Set cookies

CONSERVATION PERIODS

MANGO will keep the personal data only for a period that is reasonably necessary given the requirements to respond to issues that are raised or to resolve problems, make improvements, activate its services and fulfil the requirements of the applicable legislation. This means that it may keep the personal data for a reasonable time, including after the interested party has stopped using the services of MANGO or has stopped using the WEB/APP. After this period, the personal data will be blocked on all MANGO systems.

The validity of the consent given will not have a duration in excess of 13 months and once this period has elapsed it will request a new consent when you visit our WEB/APP.

DATA TRANSFERS TO THIRD COUNTRIES

In general, the data processing will be carried out by service providers located in the European Economic Area or in countries that have been declared to offer an adequate level of protection.

International data transfers may also occur between the communications hubs of the same to third countries, in which case MANGO shall use the Standard Contractual Clauses adapted by the European Commission as a safeguard for transfers made to countries that are not covered by an adequacy decision of the European Commission. In all cases, third parties sharing certain personal data will have previously accredited the adoption of suitable technical and organizational measures for the correct protection of the same.

MANGO does not, under any circumstances, sell customer data to third parties.

The third countries to which international data transfers are made are Russia, the United States and Canada.

You can find out more information about transfers to third countries made by the third parties identified in this Cookies Policy, wherever applicable, in their corresponding policies.

59)     Due to Plaintiff's disability, she could not understand Defendant's website and she could not give informed consent to Defendant's installation of data and information tracking software on her computer.  Defendant also could not give informed consent to Defendant's collection of her browsing history and the placement of analytics on her computer.

60)    Thus, Plaintiff has no adequate remedy at law to redress Defendant's knowing and reckless disregard for Plaintiff's right to exclude others from her computer and determine which programs should be installed and operated on her computer.

WHEREFORE, Plaintiff demands judgment against Defendant for Plaintiff's damages, interest, costs, and such further relief as the Court deems just and equitable.

**Request for Jury Trial**

61)    Plaintiff requests a jury trial.

Submitted by:

Mendez Law Offices, PLLC
Attorneys for Plaintiff
P.O. BOX 228630
Miami, Florida 33172
Telephone: 305.264.9090
Facsimile: 1-305.809.8474
Email:info@mendezlawoffices.com
By: _____ /s/ _____
DIEGO GERMAN MENDEZ, ESQ.
FL BAR NO.: 52748

Adams & Associates, P.A.
Attorneys for Plaintiff
6500 Cowpen Road, Suite 101
Miami Lakes, FL  33014
Telephone:  786-290-1963
Facsimile:  305-824-3868
Email:  radamslaw@bellsouth.net
By: _____ /s/ _____
RICHARD J. ADAMS, ESQ.
FL BAR NO.: 770434